GEORGE J. STANNARD *v.* HASKELL G. SMITH.

*Book Account. Accord and Satisfaction. Memorandum. Contract.
Evidence.*

The plaintiff was employed by the defendant, upon the defendant's credit alone,
to open and develop a coal mine on lands in Kentucky, which were owned by
the defendant with others, which the plaintiff knew, he having talked with the
other owners about the property, and having drawn on them for some funds to
carry on the business by the defendant's direction. *Held,* that the action for the
plaintiff's services, &c., was properly brought against the defendant alone. Th
mere fact that others were co-tenants with the defendant in the land, is not enough
to warrant a presumption that they were partners with him in his scheme to
develop a coal mine upon it. The paper evidence in the case does not prove an
accord and satisfaction.

A memorandum of a parol contract, made and signed by one of the parties thereto
in his private memorandum book, for his own personal use, is conclusive upon
no one. It is not a contract. It is, at most, but a piece of evidence not admissi-
ble in favor of the party, except when accompanied by proper parol proof, and
not competent against him, except as an admission, the force of which to be
determined by proof of the circumstances under which it was made.

The court cannot presume that an auditor excluded an item of testimony from con-
sideration, from the mere fact that he does not state whether he considered it or
not.

THIS was an action on Book, in which the auditor made and filed his report, to which report the defendant filed exceptions.

The county court, at the April Adjourned Term, 1867, WILSON, J., presiding, rendered judgment, *pro forma*, for the plaintiff to recover the amount reported by the auditor, to which judgment the defendant excepted. A motion to recommit was also filed on the part of the defendant.

The auditor reported as follows :

" In March, 1853, the defendant, who then resided or kept an office in New York city, and Henry Van Bergen and S. G. Roots, who lived in Cincinnati, were the owners of certain coal mining lands in Kentucky, and there was about that time some correspondence between the plaintiff and the defendant in relation to the plaintiff's going to Kentucky, under a salary or otherwise, for the purpose of examining, developing and working said lands for coal mining. In April, 1853, the plaintiff and the defendant went to Cincinnati, and had some conversation with Van Bergen & Roots, and went to Kentucky and saw the lands. This journey was taken for the purpose of determining whether the parties would enter into an arrangement to commence the business of mining for coal on said lands, but no agreement was made while in Cincinnati or Kentucky in relation to the business.

" Afterwards, on the 20th day of May, 1853, an agreement was made between the plaintiff and the defendant, by which the plaintiff was to go on to Kentucky and commence and take charge of the business of mining upon said lands, and was to be paid a salary of $1000. a year therefor, and have his traveling expenses paid, the defendant to furnish funds to carry on the business, as fast as it should be required ; and the plaintiff was to return home to St. Albans and make his arrangements, and then go on and commence business as soon as practicable, and he did so.

" It did not appear what the parties understood, at the time of the making of the contract, by the words " traveling expenses," nor that anything was then said about it ; nor did it appear when the plaintiff's time was to commence, whether when the agreement was made, or when he commenced work in Kentucky ; nor whether the defendant was to pay his board bill in Kentucky.

" Your auditor finds that it was understood by the parties that the success of the business of mining upon said lands was doubtful, and that it was not to continue unless it should be found to be profitable, and the defendant was not bound to continue the business and employ the plaintiff longer than he should deem it for his interest to do so.

" The defendant furnished some means with which to carry on the business,'and the plaintiff, by direction of the defendant, called on Van

Bergen & Roots for some funds with which to carry on the business and they furnished some. But funds were not furnished as fast as they were ordered, and the plaintiff labored under some difficulty in consequence. The plaintiff continued the business for the period of two and one-half months, and during all this time it was found unprofitable. At the expiration of two and one-half months, the plaintiff, owing to the unprofitableness of the business and the want of funds, stopped work and discharged his men, and notified the defendant that he had stopped work, and of the reasons, and at the same time informed the defendant that in his opinion the business could not be made to pay anything. To this the defendant made no reply.

" Your auditor finds that the plaintiff knew at the time of the making of the agreement, on the 20th of May, 1853, as before stated, that defendant and said Van Bergen & Roots owned said lands in common, each one-third, but the auditor finds that none but the individual credit of the defendant was pledged to the plaintiff for his services, and finds that the defendant's credit was so pledged.

" If the action can be sustained against the defendant alone upon the foregoing facts, and if it is not defeated by reason of an accord and satisfaction as hereinafter stated, then no question was made as to any of the items of the plaintiff's accounts, excepting items numbers 47, 48, 49, and the item in pencil of $40,88 ' for board and expenses in Kentucky.'

" Item number 47 is for expenses to Kentucky and back, before the 20th of May, 1853, and when the parties went with a view of determining whether they would commence business or not, as heretofore stated. Number 49 is for expenses to Kentucky and back, when the plaintiff went on to take charge of the business, as before stated ; and the charge in pencil is for board in Kentucky while carrying on the business.

" The plaintiff's counsel claimed upon the foregoing facts that the charges for board and expenses, at least the last charge for expenses, should be allowed, but your auditor disallows said charges for expenses, and said charge for board and expenses ; and item 48 is disallowed for want of sufficient testimony in support of it. The defendant introduced the letters of the plaintiff, hereto annexed, one dated September 12th, and one dated November 4th, 1853, and the check, which is attached to the former.

" The plaintiff offered evidence to explain the letter of September 12th, 1853, and to show that it was written for the purpose of a compromise. The defendant objected to the evidence, but the objection was overruled, and both parties were allowed to explain and testify in relation to the letters and check.

" The defendant claimed that the letters and check showed a proposition by the plaintiff, and an acceptance of it by the defendant, which amounted to an accord and satisfaction, and a bar to the action.

"Your auditor finds that the check was enclosed in a letter directed to the plaintiff.

"The papers are annexed at the request of the defendant's counsel. From the facts found, your auditor allows all the items of the plaintiff's account, excepting items 47, 48, 49, and the charge in pencil, amounting in the whole to the sum of $737.80, and finds that the defendant has paid towards, or upon the last mentioned sums, the sums credited upon the plaintiff's account, viz: the sum of $557.45, which leaves a balance due the plaintiff of $130.35, which last mentioned sum, with interest thereon from October 30th, 1853, to February 6th, 1867, amounts to the sum of $323.89, which last mentioned sum, and his costs, your auditor finds for the plaintiff to recover of the defendant.

"And the auditor submits the facts to the court to determine whether the plaintiff is entitled to recover any sum in this action, and if so, what amount."

Upon request, the auditor further reported " that the counsel for the defendant claimed, as matter of law, that the papers hereto annexed— that is, the letters, receipt and memorandum—showed an accord and satisfaction upon the face of them, and objected to parol evidence upon the subject; but your auditor, as above stated, overruled the objection, and allowed the parties to testify upon the subject and explain the papers. And from the papers and the other testimony, your auditor finds that had the proposition, contained in the plaintiff's letter of September 12th, 1853, been accepted, and the said $164.85 paid, it was the intention of the plaintiff to accept it in satisfaction of his claim.

"That the plaintiff, by that letter, wanted and meant to claim at least, the amount which he had paid out, although it might include something for which the defendant was not legally liable, or else his salary for two and a half months; and that if the defendant would pay the $164.85, that would be satisfactory, but left it optional with the defendant to add the pay for his services if he should choose to do so. Your auditor finds that the plaintiff's offer, contained in said letter, was not accepted. The defendant acted upon the belief that the check would be satisfactory, and that it would be received by the plaintiff in full satisfaction of his claim, but your auditor finds that it was not so received by the plaintiff.

"As to the memorandum which is annexed, it was used by the plaintiff to refresh his memory as to the contract between the parties. The defendant's counsel requested to have it put into the case, and it was put in. From the whole evidence, the auditor finds that whether the plaintiff should take an interest in the property and business, was left at the option of the plaintiff, and depended on the success of the business, and that the plaintiff never did take any interest in the property."

(Plaintiff's Memorandum of Agreement.)

" Agreed with H. G. Smith, May 20th, 1853, in New York, to go to Big Sandy River, in Kentucky, and start the coal mining business there, and to have one thousand dollars a year salary, and myself and E. A. Smith to have together, or individually (and did not understand which), with him, an equal share of interest in the property as proprietors. Said company to pay my traveling expenses.

Geo. J. Stannard.

(Letter of September 12th, 1853.)

" Mr. H. G. Smith,

" Enclosed you will find statement of my account, but nothing for services. I was there two and a half months, and if the thing had gone along, should have expected the $1000. a year, as we talked; but as it is, I wish to get what it has cost me, and will leave the matter to yourself. It has cost me, including the first trip and last trip to Troy, board, &c.,   -  -  -  -  · $122.20

Also, the fare to Cincinnati and back,  -  -  -  42.65

—————<br>$164.85

" This last I made a minute of below account rendered, which I did not suppose you were to pay, and did not put it in as I intended to do. The two and a half months time would come to $208.35, and I leave the matter entirely with you, and you can add the services to the account, but must give me what I have been out, if I lose my time.

" Don't fail to let me hear from you. If the matter is not satisfactory, please write, and I will explain; and when it is adjusted, please remit the balance, and oblige, yours truly,

" Geo. J. Stannard.

" St. Albans, September 12th, 1853.

(Copy of Check.)

" New York, October 39th, 1853.

" Cashier of the Mechanics' Bank :

" Pay to Geo. J. Stannard, or order, one hundred and twenty-five dollars, ($125.)               H. G. Smith."

(Copy of Receipt.)

" Received, St. Albans, November 4th, 1853, of H. G. Smith, one hundred and twenty-five dollars, by check on bank, on account for cash, and labor done in Kentucky.      Geo. J. Stannard."

Stannard v. Smith.

(LETTER OF NOVEMBER 16TH, 1853.)

" H. G. SMITH, ESQ.,

" *Dear Sir* :—Your letter with check was duly received, for which you have my thanks. I have engaged to work here for a while, on account of my family, whom I did not feel like leaving at present.
"Yours very truly,        GEO. J. STANNARD."

*E. A. Sowles* and *Edson & Rand*, for the defendant.

*H. R. Beardsley*, for the plaintiff.

The opinion of the court was delivered by

STEELE, J. No evidence is adduced in favor of the motion to recommit. The agreement to treat that motion as exceptions enables us to consider no more than what is apparent upon the face of the report. We are left to determine from the report itself, and the judgment, unaided by anything beyond, whether either the auditor or the county court have erred in matter of law.

1. Can the suit be sustained against this defendant alone? The auditor does not report facts which would have warranted the plaintiff in bringing his action against others. It was upon the defendant's credit alone that the plaintiff was employed. He was to open and develop a coal mine on lands in Kentucky, which were owned by the defendant with others. It does not appear that the other proprietors requested the defendant to engage in this enterprise, or authorized him to employ the plaintiff to perform this service. The mere fact that they were co-tenants with the defendant in the land, is not enough to warrant a presumption that they were partners with him in his scheme to develop a coal mine upon it.

2. Does the paper evidence prove an accord and satisfaction? The plaintiff's letter of September 12th, 1853, does not, as has been suggested, leave the whole matter of payment to the defendant's conscience. Some expressions in it, when taken apart from the rest of the letter, might be so understood, but read, as they should be, with the remaining portion of the letter, it becomes manifest that these expressions refer only to the plaintiff's claim for his salary. The concluding passage, " you *must* give me what I have been out, if I lose my

time," shows that he purposes or offers to submit even the matter of his salary to the defendant's conscience, only upon condition that his account for cash paid out, $164.85, is paid. If, upon receiving this letter, the defendant had accepted the proposition, and promised to pay the $164.85, it would have been an *accord.* If he had paid it, it would also have been a *satisfaction.* He did neither, but sent the plaintiff a check for $125., which the plaintiff receipted as so much on account, and on account " for cash *and labor*" done in Kentucky. The papers do not tend to prove even an accord, much less an accord and satisfaction.

These views render the question of evidence, raised upon this branch of the case, immaterial. The auditor received parol testimony against objection by the defendant, tending to show that these letters, and the transactions they prove, were not meant or understood as an accord and satisfaction. As the auditor arrived at the same conclusion with the oral testimony to which the papers should have led him without it, it is unnecessary to decide whether such testimony was admissible.

3. Was the plaintiff's memorandum to be treated as a written contract not open to explanation, addition or variation by parol testimony, and, as a matter of law, conclusive against the plaintiff upon the question of what the agreement was?

This memorandum was made without the knowledge of the defendant. It was written and signed by the plaintiff upon his private memorandum book, for his own personal use. Had the contract been reduced to writing by the parties when made, and signed by the plaintiff, and delivered to the defendant, the writing would have constituted the best evidence of the agreement, and would have come under the general rule, that written contracts are not to be varied by oral testimony. But in that case the writing would have been equally conclusive upon both parties. It would not be claimed that this memorandum, made by the plaintiff after the trade, for his own private reference, and without the defendant's knowledge, would conclude the defendant upon any question as to what the bargain really was. It cannot, then, be upon the ground that this memorandum is a written *agreement*, that the plaintiff is barred from proving the con-

tract by parol, for an agreement between two parties, by which one only is concluded, is unknown to the law. Nor can it be said that the plaintiff is estopped by his memorandum, for, among other reasons, to constitute an estoppel, the defendant must have acted or ordered his conduct in reliance upon the memorandum. It is manifest that he did not govern his conduct by a writing which he never saw or understood to exist. The memorandum, we think, was conclusive upon no one. It was no contract. At the most, it was but a piece of evidence, not admissible, in favor of the plaintiff, except when accompanied by proper parol proof, and not competent against the plaintiff in any other light than as an admission, the force of which was to be determined by proof of the circumstances under which it was made. The question for the auditor was as to what the agreement in fact was, and not what either party wrote in his memorandum book. To determine this, it was his duty to *consider*, among other things, the admissions of the parties, so far as proved, whether made in a letter, a conversation, or a memorandum book. It was not necessarily his duty to be *governed* by these admissions.

4. The defendant contends that the auditor excluded this admission from any consideration against the plaintiff, and limited its use to service as an aid to the plaintiff's recollection. In order to justify this claim, it must appear affirmatively upon the report, that the auditor so limited its application, and we do not think the report is susceptible of such a construction. The auditor states in what way the plaintiff made use of the memorandum upon the trial. He does not state what use or weight he himself gave to it, but says, that from " the whole evidence " he determined what the contract was. It would be unjustifiable for the court to presume that he excluded this item of testimony from consideration upon any subject to which it was pertinent, from the mere fact that he does not state whether he considered it or not.

The result is, we find no error of law in the report of the auditor, or in the judgment of the county court upon the report, and the judgment is affirmed.